```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
HOAI NGO, :
:
Plaintiff, :   1:17-cv-1727-GHW
:
-v - :   OPINION AND ORDER
:
OPPENHEIMER & CO., INC., :
:
:
Defendant. :
:
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

     2014 was a momentous year for plaintiff Hoai Ngo. He began the year as a successful director and senior analyst for Oppenheimer & Co., Inc. ("Oppenheimer"), a financial services company. In July, his first child was born. The year hit its low point shortly thereafter when Mr. Ngo suffered a brain aneurysm requiring several months of recovery. While paling in significance with those other events, the most significant event of 2014 for purposes of this motion was Mr. Ngo's execution of an agreement with Oppenheimer to arbitrate disputes arising out of his employment. Because the arbitration agreement between Mr. Ngo and Oppenheimer is valid and enforceable, Defendant's motion to dismiss Mr. Ngo's claims, or in the alternative, to compel arbitration and stay this action is GRANTED IN PART AND DENIED IN PART.

    I.    BACKGROUND

     Mr. Ngo worked for Oppenheimer from 2009 until 2016 as a director and senior analyst.[1] Compl. ¶¶ 1, 17 (ECF No. 1). When Mr. Ngo was hired, Oppenheimer provided him with the then-

---

[1] Unless otherwise noted, the facts are taken from the Complaint or the Plaintiff's Memorandum of Law in Opposition and are accepted as true for purposes of this motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

operative Employee Handbook, dated December 1, 2006 (the "2006 Handbook").  Pl.'s Mem. of Law in Opp'n at 1 ("Pl.'s Opp'n") (ECF No. 21).  The first page of the 2006 Handbook states that it is "not a contract of employment," but rather is "intended as a general reference" and "does not affect any written agreements you may have entered into in connection with your employment."  Affidavit of Jaime Bridges (ECF No. 20), Ex. B, at 1.

As a condition of his employment, Mr. Ngo was required to sign both an acknowledgement of receipt of the 2006 Handbook, and an arbitration agreement that appeared within the 2006 Handbook (the "2006 Arbitration Agreement").  Bridges Aff., Ex. B, at 23 (the "2006 Arbitration Agreement").  The 2006 Arbitration Agreement provided, in relevant part, that "[in] consideration of my employment, or continued employment (if already employed), I agree that any dispute, controversy or claim which I have arising out of or relating to my employment or separation of employment . . . shall be arbitrated before the National Association of Securities Dealers (NASD)."  *Id.*  Mr. Ngo signed the 2006 Arbitration Agreement on August 21, 2009.  Pl.'s Opp'n at 2; Bridges Aff. Exs. A, C.  That day, he also signed the acknowledgement of receipt of the 2006 Handbook.

In May 2014, Mr. Ngo informed his supervisors that he and his partner were expecting a child, and he inquired about Oppenheimer's twelve-week parental leave policy.  Compl. ¶¶ 30, 31.  His supervisors discouraged him from taking leave.  *Id.* ¶ 32.  In June 2014, Mr. Ngo worked remotely for three days leading up to his daughter's birth on June 24, 2014, when he commenced parental leave.  *Id.* ¶¶ 35, 36.  Because of unexpected complications, Mr. Ngo soon notified Oppenheimer that he would be taking two months of parental leave—more than he originally planned—and would return to work on August 25, 2014.  *Id.* ¶¶ 37, 38.  Again, he was discouraged from taking leave.  *Id.* ¶¶ 39-42.  On August 16, 2014, Mr. Ngo suffered a brain aneurysm.  *Id.* ¶ 44.  His partner promptly informed Oppenheimer and completed the required medical disability forms.  *Id.* ¶ 45.  Mr. Ngo was unable to return to work until November 3, 2014.  *Id.* ¶ 46.

Around this time, Oppenheimer published a revised employee handbook (the "2014 Handbook"). Pl.'s Opp'n at 3. With few exceptions, the language in the 2014 Handbook mirrors that of the 2006 Handbook. Decl. of Hoai Ngo, Ex. A (the "2014 Handbook"). The arbitration agreement in the 2014 Handbook (the "2014 Arbitration Agreement") is longer than its 2006 counterpart, but it is not substantively different.[2] *Id.* The acknowledgement of receipt of the 2014 Handbook states, "I understand that the information in the employee handbook represents guidelines only" and "I understand that this handbook is not a contract of employment." *Id.* at 32. Unlike its counterpart in the 2006 Handbook, however, the acknowledgement receipt does not reference the arbitration clause. *Id.*

When Mr. Ngo returned to Oppenheimer, he was provided with a copy of the 2014 Handbook and was asked to electronically affirm that (i) he "agree[s] to the terms of the Arbitration Agreement"—a clear reference to the 2014 Arbitration Agreement— and (ii) he "understand[s] and acknowledge[s] the entire Oppenheimer Employee Handbook." Bridges Aff. Ex. D. Mr. Ngo separately indicated "yes" for each question. *Id.* Indeed, Mr. Ngo himself acknowledges that he electronically "executed" the 2014 Handbook. Ngo Decl. (ECF No. 22), ¶ 2.

Upon his return to work, Mr. Ngo discovered that he had been relieved of some of his former responsibilities. Compl. ¶ 47. He was no longer Co-Head of his group. *Id.* ¶ 48. In February 2015 and February 2016, he received bonuses that were lower than those he received prior to taking leave. *Id.* ¶¶ 51, 52. Finally, in June 2016, Oppenheimer terminated Mr. Ngo's employment. *Id.* ¶ 53. Mr. Ngo alleges that he was terminated in retaliation for, among other things, taking parental and medical leave in 2014.

On March 8, 2017, Mr. Ngo filed this action alleging that Oppenheimer improperly discriminated and retaliated against him for, among other things, taking leave. Oppenheimer now

---

[2] The most significant change appears to be that the designated arbitrator became FINRA or JAMS rather than NASD.

3

moves, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, to dismiss or stay this action and to compel arbitration of Mr. Ngo's claims.

## II.     LEGAL STANDARD

Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that parties can petition the district court for an order compelling arbitration under 9 U.S.C. § 4. Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had not commenced litigation nor failed to comply with an order to arbitrate by the AAA).

"The role of federal courts, in ruling on a petition to compel arbitration under the FAA, is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate.'" *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 566-67 (S.D.N.Y. 2013) (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted)). "It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate." *Isaacs*, 968 F. Supp. 2d at 567. If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must

stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016) (quoting *Nunez v. Citibank, N.A.,* No. 08–cv–5398 -BSJ, 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009)).

In resolving a motion to compel arbitration under Section 4 of the FAA, "the court applies a standard similar to that applicable [to] a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Thus, "it is proper (and in fact necessary) to consider . . . extrinsic evidence when faced with a motion to compel arbitration," *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)), and "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial.").

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense.") (internal quotation marks omitted). Courts in this Circuit engage in the following inquiry:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable;

5

and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

### III.  DISCUSSION

The parties do not dispute that all of Mr. Ngo's claims are arbitrable and fall within the scope of the 2014 Arbitration Agreement. As a result, the only questions before the Court are (i) whether the 2014 Arbitration Agreement is a valid and enforceable agreement to arbitrate, and, if so, (ii) whether this action should be dismissed or stayed pending arbitration.

#### A.  The Parties Agreed to Arbitrate

"Arbitration is contractual by nature." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). "Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel*, 697 F.3d at 119. "Under New York law, a person who 'signs or accepts a written contract is constructively presumed to know its contents and to assent to them.'" *Isaacs*, 968 F. Supp. 2d at 569 (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)).

The Court finds that the parties agreed to arbitrate, among other things, disputes arising out of Mr. Ngo's employment by virtue of entering into the 2014 Arbitration Agreement.[3] Mr. Ngo does not dispute that he "received notice of and assented to" the 2014 Arbitration Agreement. *Litvinov v. UnitedHealth Grp. Inc.*, No. 13-cv-8541-KBF, 2014 WL 1054394, at *2 (S.D.N.Y. Mar. 11, 2014). To the contrary, as explained previously, Mr. Ngo expressly affirmed that he electronically "agree[d] to the terms of the [2014] Arbitration Agreement." Bridges Aff. Ex. D. Furthermore, the

---

[3] The Court notes that, while its analysis here focuses on the operative 2014 Arbitration Agreement, both the 2006 Arbitration Agreement and the 2014 Arbitration Agreement were executed by both parties. Mr. Ngo signed the 2006 Arbitration Agreement and expressly indicated that he reviewed and accepted the 2014 Arbitration Agreement. Given that the substance of the 2014 Arbitration Agreement is substantively identical to its 2006 counterpart, the Court's conclusions are equally applicable to the 2006 Arbitration Agreement to the extent it applies.

2014 Arbitration Agreement states that it must be signed as a condition of "your employment, or continued employment (if already employed)." 2014 Arbitration Agreement. Mr. Ngo continued to be employed by Oppenheimer for nearly two more years.[4] For these reasons, the Court concludes that Mr. Ngo agreed to the terms of the 2014 Arbitration Agreement.

### B. The 2014 Arbitration Agreement is Distinct from the 2014 Handbook and is Therefore Enforceable

Defendant argues that the 2014 Arbitration Agreement is enforceable because, even though it was originally presented together with the 2014 Handbook, it was a separate and distinct document not subject to the handbook's disclaimer. Mr. Ngo's sole argument in opposition is that the 2014 Arbitration Agreement is unenforceable because it was presented to him within the 2014 Handbook, which included the disclaimer language stating that it was "not a contract of employment," and was only "intended as a general reference."

Mr. Ngo relies on several cases that he asserts support his position that Defendant "cannot selectively rely on the arbitration provision of the Handbook but ignore the disclaimer language." Pl.'s Opp'n at 7. Those cases are distinguishable. For example, in *Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (2001), the plaintiff alleged that he was fired in violation of a section of the defendant employer's code of business conduct, which had been distributed to employees in a manual format. The section in question provided for "protection against any form of reprisal" for whistleblowing. *Id.* at 315. The page facing that provision clearly stated, however, that "[t]his code of conduct is not a contract of employment and does not create any contractual rights of any kind." *Id.* As a result, the New York Court of Appeals rejected the plaintiff's breach

---

[4] Defendant also points to a line of cases standing for the proposition that an employee need not sign an agreement with an arbitration provision so long as the "plaintiff was advised that compliance with the arbitration policy was a condition of continued employment, [and] was advised that it was her responsibility to 'read and understand' all of the company policies including the arbitration policy, and she continued her employment with defendant." Def.'s Mem. of Law (ECF No. 19), at 6-7 (quoting *Brown v. St. Paul Travelers Cos.*, 599 F. Supp. 2d 288, 291 (W.D.N.Y. 2008)). The Court does not need to reach that conclusion here because, as described above, Mr. Ngo expressly signed the 2006 Arbitration Agreement and expressed his consent to the 2014 Arbitration Agreement.

of contract claim, concluding that "[a]n employee seeking to rely on a provision arguably creating a promise [the reprisal provision] must also be held to reliance on the disclaimer." *Id.* at 317.

This case is fundamentally different from *Lobosco* and the other cases cited by Mr. Ngo because the 2014 Arbitration Agreement was a separate and distinct agreement between Mr. Ngo and Oppenheimer that was not subject to any disclaimers. First, the formatting of the 2014 Arbitration Agreement makes clear that it is distinct from the 2014 Handbook. Among other things, unlike the 2014 Handbook, the 2014 Arbitration Agreement uses a single-column layout and a large heading in a distinct font.

Moreover, the 2014 Arbitration Agreement was separately executed from the handbook. Mr. Ngo agreed to the 2014 Arbitration Agreement by electronically affirming—separate from his acknowledgement of receipt of the 2014 Handbook—that he agreed to its terms. Bridges Aff. Ex. D. "With regards to arbitration agreements in the employment context, '[c]ourts in this district routinely uphold arbitration agreements contained in employee handbooks where . . . the employee has signed an acknowledgment form.'" *Patterson*, 96 F. Supp. 3d at 76 (quoting *Chanchani v. Salomon/Smith Barney, Inc.,* No. 99-cv-9219-RCC, 2001 WL 204214, *3 (S.D.N.Y. Mar. 1, 2001)).

Finally, the 2014 Arbitration Agreement is devoid of any language indicating that it is not binding.[5] In fact, as explained previously, the language of the 2014 Arbitration Agreement emphasizes its binding nature, stating that "You and Oppenheimer agree that any Covered Claims . . . will be resolved by final and binding arbitration as set forth in this Arbitration Agreement . . . By entering into this Arbitration Agreement, you and Oppenheimer each acknowledge and agree that, to the fullest extent permitted by law, you and Oppenheimer are giving up your and its right to

---

[5] The only disclaimer language contained in the 2014 Arbitration Agreement states that it is not an employment contract, not that it is nonbinding as an agreement to arbitrate. 2014 Arbitration Agreement ¶ 12. ("The Agreement does not constitute, and may not be construed by you, as a guarantee of employment for any length of time. Your employment with Oppenheimer is on at 'at-will' basis. Accordingly, your employment can be terminated with or without cause and with or without notice at any time at the option of either you or Oppenheimer.").

a jury trial of Covered Claims." 2014 Arbitration Agreement ¶ 1. "[W]hen the language of the arbitration agreement is distinct and mandatory and when the employee is advised of the policy and that compliance with it is a condition of employment," the arbitration agreement is enforceable, even if it appears in a handbook containing a general disclaimer. *Isaacs*, 968 F. Supp. 2d at 571 (internal citations and alterations omitted) (citing *Brown v. St. Paul Travelers Co.*, 559 F. Supp. 2d 288, 292 (W.D.N.Y. 2008)); *see also Patterson*, 96 F. Supp. 3d at 78 ("Here, the [arbitration agreement] clearly states: This Program is an essential element of your continued employment relationship . . . . This language stands in sharp contrast with other language in the Handbook negating the creation of a promise of continued employment, employment contract, term or obligation of any kind. The [arbitration agreement's] language is, consequently, distinct and mandatory.") (internal citations and quotations omitted)). The language in the 2014 Arbitration Agreement is clear and mandatory.

For these reasons, Mr. Ngo's argument fails. The 2014 Arbitration Agreement is an agreement separate and distinct from the 2014 Handbook and one that was fully executed by both parties in this case. It is therefore enforceable, despite the fact that it was originally presented to Mr. Ngo within the 2014 Handbook.

  **C.** **Whether to Stay Proceedings**

"[W]hen all the claims in an action have been referred to arbitration *and a stay [is] requested*" the "text, structure, and underlying policy of the FAA mandate a stay of proceedings." *Katz v. Cellco P'ship*, 794 F.3d 341, 343, 347 (2d Cir. 2015) (emphasis added). In other words, where a party has requested that the proceeding be stayed pending arbitration—whether in the alternative or otherwise—the Court must stay the action.

Here, Oppenheimer requested, albeit in the alternative, a stay pending the outcome of arbitration. Because Oppenheimer has requested a stay, the Court cannot dismiss the case. In the wake of *Katz*, if Oppenheimer wished for the Court to dismiss the action, it might have requested that relief alone. By following the template used by many defendants' counsel prior to *Katz*—

requesting dismissal or, in the alternative, a stay—Oppenheimer has dictated the outcome. The Court must stay the action.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss is DENIED and its motion in the alternative to compel arbitration is GRANTED. This action is STAYED, pending resolution of the arbitration proceeding.

SO ORDERED.

Dated: November 30, 2017
New York, New York

GREGORY H. WOODS
United States District Judge