EXHIBIT C

JUDICIAL ARBITRATION AND MEDIATION SERVICES

```
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x
HOAI NGO,                                         :
                  Claimant,        :  Case No.: 1425025377
             -against-                            :
OPPENHEIMER & CO. INC.,                           :
                  Respondent.                     :
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x
```

## ANSWER TO STATEMENT OF CLAIM

Respondent Oppenheimer & Co. Inc. ("Respondent" or "Oppenheimer"), through its attorneys, Satterlee Stephens LLP, respectfully submits the following Answer to the Statement of Claim of Claimant Hoai Ngo ("Claimant" or "Mr. Ngo").

## GENERAL DENIAL

To the extent not specifically addressed below, Oppenheimer denies any and all liability to the Claimant under the facts alleged within the Statement of Claim.

## RESPONSE TO STATEMENT OF CLAIM

By his Statement of Claim in this proceeding, Mr. Ngo alleges that Oppenheimer violated Title VII of the Human Rights Act of 1967, the Americans with Disabilities Act of 1990, the New York State Human Rights Law, the Administrative Code of the City of New York, and the Family and Medical Leave Act with regard to certain actions allegedly taken by Oppenheimer related to his "at-will" employment.  More specifically, Mr. Ngo, the former Co-Head of Oppenheimer's High Yield Research group, alleges, among other things, that Oppenheimer discriminated and/or retaliated against him for taking parental leave for the birth of his child, and

subsequently a medical leave, by allegedly demoting him and, nearly two years later, terminating his employment. Mr. Ngo also alleges that Oppenheimer violated the Americans with Disabilities Act by allegedly failing to provide Mr. Ngo with an unidentified reasonable accommodation. Mr. Ngo's claims are entirely without merit.

Mr. Ngo was employed "at-will" as a research analyst for Oppenheimer from approximately August of 2009 through June 30, 2016. In or about October of 2013, Mr. Ngo and Oppenheimer employee Colleen Burns (the two most senior analysts in the group at the time) were promoted to Co-Heads of the High Yield Research group, a role that involves supervisory and compliance related obligations.

In May of 2014, Mr. Ngo advised his Oppenheimer supervisor, Robert Lowenthal, that he and his partner were having a baby via surrogacy. Pursuant to Oppenheimer's policies, Mr. Ngo was entitled to take up to 12 weeks of unpaid leave in connection with the birth of his child. However, Mr. Ngo initially proposed to Oppenheimer that he would take 3-4 weeks of informal leave to travel to California for the birth of his child. During this time period, Mr. Ngo proposed that he would continue to provide certain services to Oppenheimer (including services associated with his supervisory role). In exchange for continuing to provide these services, Mr. Ngo proposed that he would continue to be paid, despite the fact that Oppenheimer does not maintain a paid parental leave policy. Neither Mr. Lowenthal, nor any other Oppenheimer employee, attempted to dissuade Mr. Ngo from taking unpaid parental leave for as long as Oppenheimer's policies provided. In fact, as the Statement of Claim acknowledges, Mr. Lowenthal suggested that Mr. Ngo review Oppenheimer's Employee Handbook and speak to Human Resources regarding leave issues.

As a result of the above, Oppenheimer and Mr. Ngo jointly prepared for Mr. Ngo to be absent from the office for 3-4 weeks. This preparation included accounting for work functions that would need to be covered while Mr. Ngo was out of the office, including some of his supervisory obligations. Many of these obligations were allocated to his Co-Head of the group, Ms. Burns.

On or about July 13, 2014, approximately three weeks after the birth of his child, Mr. Ngo advised Oppenheimer that he would not to return to work during the original 3-4 week window that he had proposed. Mr. Ngo advised Oppenheimer that he now intended to return to work on August 25, 2014, approximately 11 weeks after commencing the paid leave that he had proposed to Oppenheimer. Mr. Ngo's choice caused concern for Oppenheimer, as, in relying on Mr. Ngo's proposal of a 3-4 week paid leave, Oppenheimer had only prepared to have his work covered for that time period. Moreover, the evidence will reflect that, despite his allegation that he was discriminated and/or retaliated against during this time period, Oppenheimer continued to pay Mr. Ngo his salary up to and including approximately August 25, 2014.

During the period of approximately July 13, 2014 through August, 16, 2014, Oppenheimer continued to ensure that Mr. Ngo's work, including his supervisory obligations, was covered. Moreover, Mr. Ngo (who was getting paid during this time period) was often unresponsive to Oppenheimer's attempts to get clarity on when he would be returning and to have him assist in ensuring that his work responsibilities were adequately covered. As a result of this, Mr. Lowenthal (as well as Jane Ross, the Head of Oppenheimer's High Yield business) lost confidence in Mr. Ngo's abilities to act as a supervisor. During this same time period, Ms. Burns (Mr. Ngo's Co-Head of the group) continued to impress Mr. Lowenthal and Ms. Ross with her

-3-

ability to shoulder the workload that had been placed on her as a result of Mr. Ngo's extended

paid absence from the office.  It was also observed during this time period that, as a result of

restructuring, there was no need to have two supervisors overseeing the High Yield Research

group.  As a result of all of the above, Mr. Lowenthal intended to advise Mr. Ngo that his

supervisory functions at Oppenheimer were being removed upon his anticipated return from paid

leave on August 25, 2014.

Unfortunately, Mr. Ngo was unable to return to work on August 25, 2014, as on or about

August 16th, he suffered a brain aneurysm.  It was at this point that Mr. Ngo first went on formal

FMLA medical leave.  As Mr. Ngo never returned from his paid parental leave prior to his

medical leave, Oppenheimer was unable to inform him that his supervisory responsibilities were

being removed.  Tellingly, on October 9, 2014, while out on medical leave, Mr. Ngo (who now

claims to have been pressured and harassed by, among others, Mr. Lowenthal, during his prior

paid parental leave) wrote to Mr. Lowenthal stating:

> [T]o be frank, recovery is very boring.  I can't wait to
> get back to work and resume my normal day…
> I want to thank you all for your support and concern.
> Everyone at Oppenheimer has been so nice through this
> ordeal…I'm looking forward to seeing everyone soon.

Mr. Ngo returned from his medical leave on November 3, 2014 (approximately 4 ½

months since he last appeared for work in the office).  It was at this point that Mr. Ngo was

advised that his supervisory responsibilities had been reassigned and that Ms. Burns, who had

been acting as the sole Head of the High Yield Research group during the entire time of Mr.

Ngo's absence, would continue in that regard.  Oppenheimer's decision to remove Mr. Ngo's

supervisory responsibilities was in not in retaliation for, or in any way related to: (i) the fact that

he had elected to take parental leave to be present at the birth of his child; or (ii) the fact that he subsequently went on medical leave as the result of his brain aneurysm.  Rather, as set forth above, Mr. Ngo's supervisory obligations were removed as a result of his conduct while on the paid parental leave (that he proposed) and Mr. Lowenthal and Ms. Ross' resulting loss of confidence in his abilities to act in a supervisory role, as well as firm restructuring. Notably, Oppenheimer did not terminate Mr. Ngo's "at-will" employment as a result of his conduct, although it was its right to do so.  Moreover, after his supervisory obligations were removed, Oppenheimer continued to pay Mr. Ngo the same salary that he had earned as the Co-Head of the group.    In fact, for 2014, a year in which Mr. Ngo: (i) worked approximately eight months; and (ii) now claims to have been discriminated and retaliated against by Oppenheimer, Mr. Ngo's W-2 reflects that he earned in excess of $360,000 in compensation, including discretionary bonuses.

Over the next approximately 1 ½ years, Mr. Ngo continued to be employed at Oppenheimer as a Senior Research Analyst.  In that regard, Mr. Ngo's W-2's reflect that he was compensated in excess of $225,000 in 2015 and in excess of $227,000 for part of 2016, including discretionary bonuses.  During this time period, Mr. Ngo did not complain or otherwise indicate to Mr. Lowenthal, Ms. Ross, or Oppenheimer's Human Resources Department that he felt that the removal of his supervisory responsibilities was the result of discrimination or retaliation for his taking paid parental leave, FMLA medical leave, or any other reason.   Tellingly, Mr. Ngo did not file his Charge of Discrimination with the EEOC until October 20, 2016, nearly **two years** after his change in job responsibilities.[1]

During this same time period it was well publicized that Oppenheimer suffered significant losses in revenue and profits thereby forcing it to lay-off a number of employees,

---

[1] By its Answer, Oppenheimer expressly reserves any and all defenses based on the applicable statute of limitations.

-5-

including Mr. Ngo and several other research analysts.   Oppenheimer's decision to terminate Mr. Ngo's "at-will" employment was entirely the result of Oppenheimer's economic set-backs and firm restructuring and was in no way retaliation for his taking parental or medical leave over 18 months earlier.

**CLAIMANT'S ALLEGATIONS**

**NATURE OF DISPUTE**

1.      Oppenheimer admits the allegations set forth within Paragraph 1 of the Statement of Claim to the extent that they allege that Mr. Ngo was employed as an analyst at Oppenheimer from approximately August, 2009 through June 30, 2016 and that Mr. Ngo had certain job responsibilities removed and was ultimately terminated by Oppenheimer.   Oppenheimer denies that any action that it took with regard to Mr. Ngo's employment was the result of Mr. Ngo's sex or disability, or retaliation for any alleged request for a reasonable accommodation, or otherwise a violation of the law.

2.      Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 2 of the Statement of Claim. Oppenheimer denies that it violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the New York State Human Rights Law, or the Administrative Code of the City of New York with regard to Mr. Ngo's employment.

3.      Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 3 of the Statement of Claim. Oppenheimer denies that it violated the Family and Medical Leave Act with regard to Mr. Ngo's employment.

2888716_1

4.      Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 4 of the Statement of Claim. Oppenheimer denies that Mr. Ngo is entitled to recover any damages under the facts alleged within the Statement of Claim.

## JURISDICTION AND VENUE

5.      Oppenheimer admits the allegations set forth within Paragraph 5 of the Statement of Claim.

6.      Oppenheimer admits the allegations set forth within Paragraph 6 of the Statement of Claim.

## PARTIES

7.      Oppenheimer admits the allegations set forth within Paragraph 7 of the Statement of Claim to the extent that they allege that Mr. Ngo was an "at-will" employee of Oppenheimer from approximately August of 2009 through June 30, 2016.  Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the remaining allegations set forth within Paragraph 7 of the Statement of Claim.

8.      Oppenheimer admits the allegations set forth within Paragraph 8 of the Statement of Claim.

## FACTUAL ALLEGATIONS

### Background

9.      Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 9 of the Statement of Claim.

10.     Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 10 of the Statement of Claim.

11.     Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 11 of the Statement of Claim.

12.     Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 12 of the Statement of Claim.

### Ngo's Successful Career at Oppenheimer[2]

13.     Oppenheimer admits the allegations set forth within Paragraph 13 of the Statement of Claim.

14.     Oppenheimer admits the allegations set forth within Paragraph 14 of the Statement of Claim.

15.     Oppenheimer admits the allegations set forth within Paragraph 15 of the Statement of Claim to the extent that they allege that, upon his hire, Mr. Ngo originally reported to Todd Morgan who in turn reported to Robert Lowenthal and that Jane Ross was, during the relevant time period, and currently remains as, the Head of High Yield Sales at Oppenheimer. Oppenheimer denies the allegations set forth within Paragraph 15 of the Statement of Claim to the extent that they allege that Robert Lowenthal is currently Oppenheimer's Senior Managing Director of Fixed Income.  Oppenheimer affirmatively states that Mr. Lowenthal's current title is Head of U.S. Investment Banking and Global Fixed Income.

16.     Oppenheimer admits the allegations set forth within Paragraph 16 of the Statement of Claim.

---

[2] Oppenheimer does not respond to the accuracy of the characterization of the section headers utilized within Claimant's Statement of Claim, which are utilized within Oppenheimer's Answer only for the purpose of consistency.

-8-

17.     Oppenheimer admits the allegations set forth within Paragraph 17 of the Statement of Claim to the extent that they allege that, during certain years, Mr. Ngo was among the highest compensated research analysts in his group at Oppenheimer, including his receipt of discretionary bonuses.  Oppenheimer denies the allegations set forth within Paragraph 17 of the Statement of Claim to the extent that they allege that Mr. Ngo "consistently received positive feedback from his managers" or that his performance at Oppenheimer was "exemplary."

18.     Oppenheimer does not respond to the allegations set forth within Paragraph 18 of the Statement of Claim to the extent that they allege that in 2011 Mr. Ngo received the "highest performance evaluation" in his group, as it is vague and ambiguous.  Oppenheimer admits the allegations set forth within Paragraph 18 of the Statement of Claim to the extent that they allege that for 2010, Mr. Ngo received a discretionary bonus in the amount of $170,000 and that his total Oppenheimer compensation for 2010 was approximately $225,000.

19.     Oppenheimer admits the allegations set forth within Paragraph 19 of the Statement of Claim to the extent that they allege that in February of 2012, Mr. Ngo advised Oppenheimer that he had received an employment offer from a competitor and that Oppenheimer offered to increase Mr. Ngo's compensation in order to retain his services.  Oppenheimer denies the allegations set forth within Paragraph 19 of the Statement of Claim to the extent that they allege that it was "contrary to Oppenheimer's standard practice" to counterbid to retain employees who received offers from competitors.

20.     Oppenheimer admits the allegations set forth within Paragraph 20 of the Statement of Claim to the extent that they allege that Mr. Ngo was promoted to the title of Executive Director in 2011.

2888716_1

21.     Oppenheimer admits the allegations set forth within Paragraph 21 of the Statement of Claim.

22.     Oppenheimer admits the allegations set forth within Paragraph 22 of the Statement of Claim.

23.     Oppenheimer admits the allegations set forth within Paragraph 23 of the Statement of Claim to the extent that they refer to Mr. Ngo's compensation for 2014, including discretionary bonuses.  Oppenheimer denies the remaining allegations set forth within Paragraph 23 of the Statement of Claim.

### Oppenheimer's Leave Policies

24.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph 24 of the Statement of Claim and respectfully refers the Arbitrator to the referenced policies for a true and accurate reading of their contents in their proper context.

25.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph 25 of the Statement of Claim and respectfully refers the Arbitrator to the referenced policies for a true and accurate reading of their contents in their proper context.

26.     Oppenheimer admits the allegations set forth within Paragraph 26 of the Statement of Claim to the extent that they allege that Oppenheimer provides all employees with all rights and benefits conferred upon them by Oppenheimer's written policies, regardless of the employee's gender.

### Ngo's Parental Leave

27.     Oppenheimer admits the allegations set forth within Paragraph 27 of the Statement of Claim.

-10-

2888716_1

28.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph 28 of the Statement of Claim to the extent that they refer to the terms of Oppenheimer's parental leave policy and respectfully refers the Arbitrator to the referenced policy for a reading of its contents in its proper context.  Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 28 of the Statement of Claim to the extent that they refer to Mr. Ngo's alleged conversations with two unidentified "female colleagues" at Oppenheimer.

29.     Oppenheimer admits the allegations set forth within Paragraph 29 of the Statement of Claim to the extent that they allege that in May of 2014, Mr. Ngo met with Jane Ross regarding his intent to take a leave of absence for the birth of his child and that Ms. Ross advised Mr. Ngo that she did not use the entire 12 weeks of parental leave that she was entitled to when she gave birth to her children.  Oppenheimer denies the allegations set forth within Paragraph 29 of the Statement of Claim to the extent that they allege that Ms. Ross attempted to dissuade Mr. Ngo from taking parental leave.  Oppenheimer further denies the allegations set forth within Paragraph 29 of the Statement of Claim to the extent that they allege that Ms. Ross "approved" any employee's election to take parental leave.  Oppenheimer affirmatively states that Mr. Ngo did not report to Ms. Ross, but, rather, to Mr. Lowenthal.  Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 29 of the Statement of Claim to the extent that they relate to Mr. Ngo's alleged "concerns."

30.     Oppenheimer admits the allegations set forth within Paragraph 30 of the Statement of Claim to the extent that they allege that Mr. Ngo and Ms. Ross discussed work

-11-

coverage while Mr. Ngo was on leave.  Oppenheimer further admits the allegations set forth

within Paragraph 30 of the Statement of Claim to the extent that they allege that Oppenheimer

did not require any employee, regardless of their gender, to work during any unpaid parental

leave.  Oppenheimer affirmatively states that, at his suggestion, Mr. Ngo agreed to perform

certain services for Oppenheimer while he was out on paid parental leave and to coordinate with

his colleagues to communicate any changes formally, with sufficient lead time to allow

Oppenheimer to manage its regulatory requirements and business needs.  Oppenheimer denies

the remaining allegations set forth within Paragraph 30 of the Statement of Claim.

31.     Oppenheimer admits the allegations set forth within Paragraph 31 of the

Statement of Claim.  Oppenheimer affirmatively states that Mr. Ngo proposed to Oppenheimer

that he continue to provide certain services to Oppenheimer while on leave in exchange for,

among other things, being paid while on leave.

32.     Oppenheimer denies knowledge or information sufficient to form a belief with

regard to the truth of the allegations set forth within Paragraph 32 of the Statement of Claim.

33.     Oppenheimer admits the allegations set forth within Paragraph 33 of the

Statement of Claim to the extent that they allege that Mr. Ngo's child was born on or about June

24, 2014, and that he immediately commenced his paid parental leave, pursuant to the terms that

he proposed to Oppenheimer.

34.     Oppenheimer denies knowledge or information sufficient to form a belief with

regard to the truth of the allegations set forth within Paragraph 34 of the Statement of Claim.

35.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph

35 of the Statement of Claim and respectfully refers the Arbitrator to the referenced

-12-

communication for a true and accurate reading of its contents in its proper context. Oppenheimer

denies knowledge or information sufficient to form a belief with regard to the truth of the

allegations set forth within Paragraph 35 of the Statement of Claim to the extent they relate to

Mr. Ngo's alleged "concerns." Oppenheimer denies the allegations set forth within Paragraph 35

of the Statement of Claim to the extent that they allege that Ms. Ross attempted to "dissuade"

Mr. Ngo from taking parental leave. Oppenheimer affirmatively states that Mr. Ngo did not

report to Ms. Ross, but, rather, to Mr. Lowenthal.

36.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph

36 of the Statement of Claim and respectfully refers the Arbitrator to the referenced

communication for a true and accurate reading of its contents in its proper context.

37.     Oppenheimer admits the allegations set forth within Paragraph 37 of the

Statement of Claim to the extent that during a phone call on or about July 16, 2014, Ms. Burns

suggested that Mr. Ngo contact Ms. Ross and Mr. Ngo's supervisor, Mr. Lowenthal.

Oppenheimer denies the allegations set forth within Paragraph 37 of the Statement of Claim to

the extent that they allege that Ms. Ross or Mr. Lowenthal were upset about the "length" of Mr.

Ngo's paid parental leave.

38.     Oppenheimer denies the allegations set forth within Paragraph 38 of the

Statement of Claim to the extent that they allege that Mr. Lowenthal was "angry about [Mr. Ngo]

having taken parental leave" and that Mr. Lowenthal took any action to "punish" Mr. Ngo for

taking parental leave. Oppenheimer denies knowledge or information sufficient to form a belief

with regard to the truth of the allegations set forth within Paragraph 38 of the Statement of Claim

-13-

to the extent that they refer to Mr. Ngo's feelings or understandings.  Oppenheimer admits the remaining allegations set forth within Paragraph 38 of the Statement of Claim.

39.     Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 39 of the Statement of Claim to the extent that they relate to Mr. Ngo's alleged fears.  Oppenheimer denies the allegations set forth within Paragraph 39 of the Statement of Claim to the extent that they allege that Oppenheimer in any way retaliated against Mr. Ngo for taking parental leave.

40.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph 40 of the Statement of Claim and respectfully refers the Arbitrator to the referenced communication for a true and accurate reading of its contents in its proper context.

## Ngo's Medical Leave

41.     Oppenheimer admits the allegations set forth within Paragraph 41 of the Statement of Claim to the extent that they allege that Mr. Ngo suffered a brain aneurysm in August of 2014.  Oppenheimer denies knowledge or information sufficient to form a belief with regard to the remaining allegations set forth within Paragraph 41 of the Statement of Claim.

42.     Oppenheimer admits the allegations set forth within Paragraph 42 of the Statement of Claim.

43.     Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth of the allegations set forth within Paragraph 43 of the Statement of Claim to the extent that they refer to the recommendations of Mr. Ngo's doctor and Mr. Ngo's recovery from surgery.  Oppenheimer neither admits nor denies the remaining allegations set forth within

2888716_1

Paragraph 43 of the Statement of Claim and respectfully refers the Arbitrator to the referenced communication for a true and accurate reading of its contents in their proper context.

### Oppenheimer Demotes Ngo Upon His Return from Leave

44.     Oppenheimer admits the allegations set forth within Paragraph 44 of the Statement of Claim to the extent that they allege that on November 3, 2014 Mr. Ngo returned to work and that Oppenheimer no longer required Mr. Ngo to perform certain supervisory duties upon his return.  Oppenheimer denies the remaining allegations set forth within Paragraph 44 of the Statement of Claim.

45.     Oppenheimer admits the allegations set forth within Paragraph 45 of the Statement of Claim to the extent that they allege that Ms. Burns continued as the Head of the High Yield Research group.  Oppenheimer denies the remaining allegations set forth within Paragraph 45 of the Statement of Claim.

46.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph 46 of the Statement of Claim and respectfully refers the Arbitrator to the referenced communications for a true and accurate reading of their contents in their proper context.

47.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph 47 of the Statement of Claim and respectfully refers the Arbitrator to the referenced communication for a true and accurate reading of its contents in its proper context.

48.     Oppenheimer admits the allegations set forth within Paragraph 48 of the Statement of Claim to the extent that they allege that Mr. Ngo's discretionary bonus for 2014 (paid in February of 2015) was less than the discretionary bonus that he had received for 2013. Oppenheimer denies knowledge or information sufficient to form a belief with regard to the truth

-15-

of the allegations set forth within Paragraph 48 of the Statement of Claim to the extent that they

refer to what Mr. Ngo allegedly understood.  Oppenheimer denies the allegations set forth within

Paragraph 48 of the Statement of Claim to the extent that they allege that any reduction in the

discretionary bonus paid to Mr. Ngo was made to "penalize" Mr. Ngo for taking parental leave

or allegedly seeking additional leave.

49.     Oppenheimer admits the allegations set forth within Paragraph 49 of the

Statement of Claim to the extent that they allege that Mr. Ngo discretionary bonus for 2015 (paid

in February of 2016) was less than the discretionary bonus that he had received for 2013.

50.     Oppenheimer admits the allegations set forth within Paragraph 50 of the

Statement of Claim to the extent that they allege that on or about June 30, 2016 (approximately

two years after Mr. Ngo's parental leave), Mr. Ngo's "at-will" employment was terminated as a

result of firm restructuring.

51.     Oppenheimer neither admits nor denies the allegations set forth within Paragraph

51 of the Statement of Claim as they set forth a legal conclusion to which no response is

required.  Oppenheimer denies the allegations set forth within Paragraph 51 of the Statement of

Claim to the extent that they allege that Oppenheimer engaged in any unlawful actions,

discrimination, or retaliation with regard to Mr. Ngo. Oppenheimer admits the allegations set

forth within Paragraph 51 of the Statement of Claim to the extent that they allege that in or

around May 2016, Oppenheimer hired a research analyst who worked in a different sector that

Mr. Ngo.

52.     Oppenheimer denies the allegations set forth within Paragraph 52 of the

Statement of Claim to the extent that they allege that Oppenheimer "shifted its justification" for

-16-

terminating Mr. Ngo.  Oppenheimer does not respond to the remaining allegations set forth within Paragraph 52 of the Statement of Claim to the extent that they are argumentative.

### AS AND FOR A RESPONSE TO CLAIMANT'S FIRST CAUSE OF ACTION
### (FMLA)

53.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 52 of this Answer as if set forth in full herein.

54.     Oppenheimer denies the allegations set forth within Paragraph 54 of the Statement of Claim.

55.     Oppenheimer denies the allegations set forth within Paragraph 55 of the Statement of Claim.

### AS AND FOR A RESPONSE TO CLAIMANT'S SECOND CAUSE OF ACTION
### (TITLE VII – DISCRIMINATION)

56.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 55 of this Answer as if set forth in full herein.

57.     Oppenheimer denies the allegations set forth within Paragraph 57 of the Statement of Claim.

58.     Oppenheimer denies the allegations set forth within Paragraph 58 of the Statement of Claim.

59.     Oppenheimer denies the allegations set forth within Paragraph 59 of the Statement of Claim.

-17-

2888716_1

## <u>AS AND FOR A RESPONSE TO CLAIMANT'S THIRD CAUSE OF ACTION</u>
## (ADA – DISCRIMINATION)

60.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 59 of this Answer as if set forth in full herein.

61.     Oppenheimer denies the allegations set forth within Paragraph 61 of the Statement of Claim.

62.     Oppenheimer denies the allegations set forth within Paragraph 62 of the Statement of Claim.

63.     Oppenheimer denies the allegations set forth within Paragraph 63 of the Statement of Claim.

## <u>AS AND FOR A RESPONSE TO CLAIMANT'S FOURTH CAUSE OF ACTION</u>
## (ADA – RETALIATION)

64.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 63 of this Answer as if set forth in full herein.

65.     Oppenheimer denies the allegations set forth within Paragraph 65 of the Statement of Claim.

66.     Oppenheimer denies the allegations set forth within Paragraph 66 of the Statement of Claim.

67.     Oppenheimer denies the allegations set forth within Paragraph 67 of the Statement of Claim.

2888716_1

## AS AND FOR A RESPONSE TO CLAIMANT'S FIFTH CAUSE OF ACTION
### (EXECUTIVE LAW – DISCRIMINATION)

68.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 67 of this Answer as if set forth in full herein.

69.     Oppenheimer denies the allegations set forth within Paragraph 69 of the Statement of Claim.

70.     Oppenheimer denies the allegations set forth within Paragraph 70 of the Statement of Claim.

## AS AND FOR A RESPONSE TO CLAIMANT'S SIXTH CAUSE OF ACTION
### (EXECUTIVE LAW – RETALIATION)

71.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 70 of this Answer as if set forth in full herein.

72.     Oppenheimer denies the allegations set forth within Paragraph 72 of the Statement of Claim.

73.     Oppenheimer denies the allegations set forth within Paragraph 73 of the Statement of Claim.

## AS AND FOR A RESPONSE TO CLAIMANT'S EIGHTH CAUSE OF ACTION
### (CITY LAW – DISCRIMINATION)

74.     Oppenheimer repeats each and every response set forth within Paragraphs 1 through 73 of this Answer as if set forth in full herein.

75.     Oppenheimer denies the allegations set forth within Paragraph 75 of the Statement of Claim.

-19-

76.     Oppenheimer denies the allegations set forth within Paragraph 76 of the

Statement of Claim.

## AS AND FOR A RESPONSE TO CLAIMANT'S NINTH CAUSE OF ACTION
### (CITY LAW – RETALIATION)

77.     Oppenheimer repeats each and every response set forth within Paragraphs 1

through 76 of this Answer as if set forth in full herein.

78.     Oppenheimer denies the allegations set forth within Paragraph 78 of the

Statement of Claim.

79.     Oppenheimer denies the allegations set forth within Paragraph 79 of the

Statement of Claim.

## AFFIRMATIVE DEFENSES

1.     Claimant's Statement of Claim fails to state a cause of action upon which relief

can be granted.

2.     Claimant's claims are barred in whole or in part by the applicable statute of

limitations.

3.     Claimant's claims are barred in whole or in part by the doctrines of waiver and

estoppel.

4.     Claimant's claims are barred in whole or in part to the extent that they fall outside

the scope of any administrative charges filed by the Claimant and/or otherwise fail to comply

with statutory prerequisites.

5.      Claimant's claims are barred in whole or in part because any alleged adverse employment action taken by Oppenheimer with regard to the Claimant was made for legitimate non-discriminatory reasons.

6.      Claimant's claims are barred in whole or in part because Oppenheimer was unable to accommodate Claimant's alleged disability without undue hardship.

7.      Claimant's claims are barred in whole or in part because Claimant has failed to mitigate his alleged damages.

8.      Claimant is not entitled to recover punitive damages under the allegations of the Statement of Claim.

Dated: March 1, 2018

SATTERLEE STEPHENS LLP

By:     Michael H. Gibson
        John I. Coster, IV
*Attorneys for Respondent*
230 Park Avenue, Suite 1130
New York, New York 10169
(212) 818-9200

To:     Valdi Licul, Esq.
        Jeremiah Iadevaia, Esq.

-21-

2888716_1